647 P.2d 1191

Georgeanna S. MARQUEZ, Petition-
er/Appellee/Cross Appellant,

v.

Alfred C. MARQUEZ, Respondent/Ap-
pellant/Cross Appellee.

No. 2 CA–CIV 4123.

Court of Appeals of Arizona,
Division 2.

April 29, 1982.

Rehearing Denied June 10, 1982.

Review Denied June 29, 1982.

**594**

Russo, Cox, Dickerson & Sylvester, P. C. by Karl MacOmber, Tucson, for petitioner/appellee/cross appellant.

Slutes, Browning, Sakrison & Grant, P. C. by William D. Browning, Tucson, for respondent/appellant/cross appellee.

## OPINION

HATHAWAY, Judge.

This is an appeal from the denial of the husband's petition to terminate spousal maintenance and the wife's cross-petition to increase it. The wife also appeals from an alleged inadequacy in the award of attorney's fees.

Alfred and Georgeanna Marquez were married about 25 years until the dissolution of their marriage in 1973. At the time of the dissolution, Alfred (appellant) was a successful attorney. Georgeanna (cross-appellant) was a homemaker. She held a bachelor's degree in psychology, earned about 30 years previously.

The decree of dissolution incorporated a settlement agreement which stated in part:

"The husband shall pay to the wife the sum of NINE HUNDRED ($900.00) DOLLARS per month as and for her spousal support, said payments to continue until the wife's remarriage or her death, whichever is sooner, or until further order of the Court."

Appellant sought termination of this provision in 1978. Evidence at that hearing showed that the cross-appellant was working as a real estate salesperson but not earning much. The trial court denied the petition and this court affirmed in a memorandum decision, *Marquez v. Marquez*, 2

CA–CIV 3154 (filed 6/8/79), in which we found that the cross-appellant, under the circumstances was making reasonable and good faith efforts in her new career.

A year after that decision, the appellant again petitioned the court to terminate his spousal maintenance obligations. At this second hearing, he showed that the cross-appellant had voluntarily cut back the hours she spent at her real estate business so that she worked only when a client sought her out. The appellant also showed that his ex-wife was working as a biofeedback counselor for her church. Her income from these two endeavors was $760 in 1980. The appellant's expert witness listed nine social service jobs paying between $9,000 and $12,600 which were available at various times before the hearing to persons with the cross-appellant's skills. The cross-appellant testified that she did not apply for any of these jobs because she expected the biofeedback work to produce more income, because she was not sure she could work a nine-to-five job and because she and the appellant had an understanding that she would not have to work in her later years. The appellant showed, in addition, that he had taken a cut in pay to become a federal district court judge and that he had lost money on some business investments. The trial court found that the cross-appellant "could not sustain herself in the job market" and that there was no substantial and continuing change of circumstances.

The appellant believes the evidence showed that the cross-appellant was able to support herself. He raises as his sole issue whether an able-bodied ex-spouse may refuse to work and thus continue to receive spousal maintenance. The cross-appeal is predicated on the trial court's alleged abuse of discretion in refusing to increase maintenance and to award the full amount of attorney's fees requested. We assume for the sake of argument that the cross-appellant is able to work at one of the jobs listed by the appellant's witness.

Appellant argues that spousal maintenance may be awarded only if the ex-spouse

is unable to support herself and that maintenance must be discontinued if she becomes able to support herself. *See* A.R.S. § 25–319; *Nace v. Nace*, 107 Ariz. 411, 489 P.2d 48 (1971). It follows, he argues, that a wilful refusal to look for work requires a termination of spousal maintenance. This is a decided misstatement of the law.

The spousal maintenance provisions in this decree were governed, not by A.R.S. § 25–319, but by A.R.S. § 25–317, which allows the parties to reach their own agreement as to the property division, spousal maintenance and child support, custody and visitation. The spousal maintenance arrangements in the separation agreement are binding on the court unless it finds that they are unfair. *Id.* In a proceeding to modify, the moving party must show a substantial and continuing change of circumstances. A.R.S. § 25–327; *In re Marriage of Rowe*, 117 Ariz. 474, 573 P.2d 874 (1978).

In the instant case, the cross-appellant was about 45 years old when the marriage ended. She has a 30-year-old college degree but has never established a career. According to her testimony, nothing was ever said about her returning to work. The settlement agreement did not indicate any understanding that she would. In fact, its provision for maintenance payments until death, remarriage or the vague "further order of the Court" would indicate an intention to provide for her needs indefinitely. The settlement agreement should be given great evidentiary weight. *Quinn v. Quinn*, 307 So.2d 848 (Fla.App.1975). The evidence supports the conclusion that the parties agreed the cross-appellant would not be expected to work. In such a case, the appellant must show something other than the fact that cross-appellant is able to work.

The appellant urges other changes that he claims support his petition. They are (1) his decrease in salary and the loss of benefits due to his resignation from his law firm to become a federal district court judge; (2) the cross-appellant's receipt of more assets from this job change and (3) the sale of two of the appellant's assets, especially when compared to the appreciation of the cross-appellant's assets.

1. *Decrease in salary.* There was evidence that the appellant earned about $69,000 in 1977 and that his current salary as a judge is $67,100. We do not believe this difference in salary is substantial. (The appellant was earning about $80,000 a year when he left the law firm in 1980. This figure, however, is not germane to the issue of whether there has been a substantial change from the time of the decree.) *See Scott v. Scott*, 121 Ariz. 492, 591 P.2d 980 (1979).

2. *Additional distribution of assets.* A profit sharing plan was liquidated when the appellant left his law firm. He points out that the cross-appellant received about $6,500 from this as her share of the community's interest in it at the time of the dissolution. It also appears, however, that the appellant received $118,000 as his share. We believe, therefore, that the trial court did not abuse its discretion in finding in the cross-appellant's favor.

3. *Sale of the assets.* The appellant sold two restaurants that were doing badly and he fears that the new owners will not be able to meet their obligations on the sale. He also asks us to look at the increase in the value of the cross-appellant's property. It appears, however, that the cross-appellant's property consists of assets she received in the dissolution settlement. The appreciation of this property would be a reasonably foreseeable change of circumstances and cannot, therefore, support a modification of the decree. *See Linton v. Linton*, 17 Ariz.App. 560, 499 P.2d 174 (1972). In addition, there has as yet been no default on the sale of the restaurants, for which the appellant should net $72,000.

It is clear from the foregoing that the appellant did not sustain his burden in the trial court. It is also clear that conditions have not changed enough to require the cross-appellant's requested increase in the maintenance; indeed, she devoted only one short paragraph in her brief to this contention.

The remaining issues are on the cross-appeal. The cross-appellant claimed almost $3,000 attorney's fees below but was awarded only $1,000. On appeal, she argues that $1,500—$2,000 should have been awarded by the trial court. A.R.S. § 25–324 gives the trial court discretion to assess reasonable attorney's fees for a party maintaining or defending against any proceeding under the dissolution statutes, considering the financial resources of both parties. The evidence shows that the cross-appellant is in a fairly good economic position. She owns her own home free of encumbrances and receives $900 a month spousal maintenance, $300 a month from the appellant's former partnership interest and about $4,000 per year from a mining claim. Indeed, her income is large enough so that she has not felt the need to work. In the absence of any claim to attorney's fees on a theory outside of A.R.S. § 25–324, we see no abuse of discretion in the failure to award them.

This court is also asked to award attorney's fees for the defense of the appeal. Although the cross-appellant claims $1,500 attorney's fees for defending the appeal, we believe $750 would be a more reasonable figure, considering the simplicity of the issue and the amount of work apparently expended.

Affirmed, with directions to enter an order for $750 attorney's fees on appeal to the cross-appellant. *See Lawrence v. Valley National Bank*, 106 Ariz. 455, 478 P.2d 79 (1970).

HOWARD and BIRDSALL, JJ., concur.