156 P.3d 1140

In re the Marriage of Thomas P. JENKINS, Petitioner–Appellee,

v.

Beverly Dawn JENKINS, Respondent–Appellant.

No. 1 CA–CV 06–0359.

Court of Appeals of Arizona, Division 1, Department A.

April 26, 2007.

Collins & Collins, L.L.P. By C. Robert Collins, Phoenix, Attorneys for Petitioner–Appellee.

Tiffany & Bosco, P.A. By Leonard J. Mark, Dorian L. Eden, Lance R. Broberg, Phoenix, Attorneys for Respondent–Appellant.

## OPINION

SNOW, Judge.

¶ 1 Beverly Dawn Jenkins ("Mother") appeals from the family court's denial of her request to modify the original child support order. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Mother and Thomas Jenkins ("Father") were married on July 17, 1996. Mother and Father have one minor child, Trace Gordon Jenkins, who was born on June 5, 1997. Prior to the marriage, Father inherited a twenty-five percent interest in 520 acres of farmland ("Property") from his mother. Pursuant to their pre-marital agreement, the Property was Father's sole and separate property. On June 18, 2004, Father filed a petition for Dissolution of Marriage and a

Decree of Dissolution ("Decree") was entered on October 14, 2005.

¶3 The Decree set forth Father's child support obligations. The family court calculated Father's gross income for purposes of child support at $6,220.83 per month and Mother's at $3,789.45 per month, and, given the parenting time awarded, ordered Father to pay $225.93 per month in child support to Mother. The court, in calculating the amount of Father's obligation, did not include as income any amount of imputed return on Father's interest in the Property, which was valued at over $7,000,000. Nevertheless, it observed that if Father sold the real estate and invested the funds, "it may be appropriate for the Court to impute income to [Father] from the investment of [those] funds, assuming the transaction actually closes." Mother did not appeal the Decree.

¶4 Subsequent to the Decree, Father and the other owners who shared an interest in the Property with Father sold the Property. On October 26, 2005, prior to closing, Father entered into an agreement with Old Republic Exchange to facilitate a "1031 exchange." A 1031 exchange, also known as a "Like Kind Exchange" or "Starker Tax Deferred Exchange," is a transaction in which an asset is sold and the proceeds of the sale are then reinvested in a similar asset. 26 U.S.C. § 1031 (West 2007).[1] No capital gain or loss is recognized, allowing the deferment of capital gains taxes that would otherwise have been due on the first sale. *Id.* at § 1031(a)(1). Thus, under the 1031 agreement, Father realized no capital gain from the sale of the Property, nor did he realize any actual income. The conditions of the exchange required that Father not have access to the proceeds of the sale and that he purchase properties of like kind within 180 days or the proceeds would be taxable as capital gains income.

¶5 The sale of Father's Property closed on November 8, 2005. The total sales price was $29,969,500.00, making Father's share $7,424,125.25. According to the record, Father subsequently completed the exchange and invested the sales proceeds in "like-kind" properties so that the transaction was not taxable.

¶6 After the sale, Mother filed a request to modify child support and on February 17, 2006, the court held a modification hearing. During the hearing Mother claimed that, due to the sale, Father had the opportunity to "earn, conservatively," a five-percent return on his share of the sale proceeds, which she maintained would amount to $31,218.23 per month in income. Mother presented no evidence as to how she came to the five-percent figure. Notwithstanding Father's claim that he did not receive any income resulting from the sale, Mother requested the court impute such income to Father and increase his child support payments to $919 per month.

¶7 The court found that Mother failed to establish a "substantial and continuing change in circumstances to warrant a modification of child support." It reasoned that Mother presented "no evidence that [Father was] currently receiving income from the sale" nor "from the new land." It concluded that "at the time of the divorce … Petitioner was a farmer and owned 7 million dollars worth of land. Currently, he is a farmer and owns 7 million dollars worth of land," and thus an increase in child support was not warranted. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–120.21(A)(1)(2003).

## DISCUSSION

¶8 The decision to modify an award of child support rests within the sound discretion of the trial court and, absent an abuse of that discretion, will not be disturbed on appeal. *Little v. Little*, 193 Ariz. 518, 520, ¶5, 975 P.2d 108, 110 (1999). An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision. *Id.* (quoting *Fought v. Fought*, 94 Ariz. 187, 188, 382 P.2d 667, 668 (1963)); *see Roberts v. Malott*,

---

1. We cite to the current versions of statutes when they have not been amended in any relevant way since this case began.

80 Ariz. 66, 68, 292 P.2d 838, 839 (1956)(holding that "a judgment will not be disturbed when there is any reasonable evidence to support it").

¶ 9 On appeal, Mother argues the family court erred in failing to modify Father's child support obligation. Although she concedes that Father is earning no income from his ownership of the Property or from the sale of the Property, she contends that such income should nevertheless be imputed to him as it was his decision to make a qualified tax-deferred exchange of the property rather than place the proceeds of the sale in an immediately-taxable, income-bearing investment. She claims that the failure to impute such income allows Father to choose between paying $935 per month or $225 per month in child support.

¶ 10 To support her claim that the family court erred by not imputing interest income from his 1031 property exchange to Father, Mother relies on *In re Marriage of Robinson,* 201 Ariz. 328, 35 P.3d 89 (App.2001). In *Robinson,* the trial court ordered a father to pay additional child support if and when he exercised stock options that were provided as part of his employment compensation. *Id.* at 331, ¶ 3, 35 P.3d at 92. This court disapproved that method of valuing the options, reasoning that failing to value vested, matured stock options "independently of and without regard to the employee parent's decision to actually exercise them" would subject the amount of child support "to the investment decisions or whims of the employee parent." *Id.* at 333, ¶ 12, 35 P.3d at 94. Here, Mother argues that Father's actions in failing to re-invest the proceeds from the sale of the Property in an interest-bearing account are analogous and thus the family court erred in failing to impute income to Father. We disagree.

¶ 11 In *Robinson,* the court squarely held that "vested employee stock options constitute income for purposes of calculating child support under the ... Guidelines." *Id.* at 330, ¶ 1, 35 P.3d at 91. The court reasoned that stock options are " 'increasingly popular as part of the corporate executive's total compensation package' " and as "a widely used form of compensation" qualify as in-come. *Id.* at 332, ¶ 9, 35 P.3d at 93 (quoting Jack E. Karns & Jerry G. Hunt, *Should Unexercised Stock Options Be Considered "Gross Income" Under State Law for Purposes of Calculating Monthly Child Support Payments?,* 33 Creighton L.Rev. 235, 256 (2000)). Thus, because vested, matured stock options themselves were recognized as income in *Robinson,* the court reasoned that the imputation of that income to the employee parent could not be made contingent on that parent's exercise of the options.

¶ 12 Appreciation in the value of Father's separate and existing property, on the other hand, which is what Father might enjoy unless and until he sells the land or invests in an income-producing asset, is not generally considered income for purposes of child support. *See, e.g., Burnette v. Bender,* 184 Ariz. 301, 305, 908 P.2d 1086, 1090 (App. 1995) (finding that the trial court did not abuse its discretion in declining to treat the capital gains from the sale of a father's commercial fishing boat and license, which were awarded to him in a dissolution decree, as gross income for purposes of modifying child support); *see also Marquez v. Marquez,* 132 Ariz. 593, 595, 647 P.2d 1191, 1193 (App.1982) (holding that an increase in the value of a former wife's property was a reasonably foreseeable change of circumstance and thus did not support a former husband's request for a downward modification of spousal maintenance).

¶ 13 Mother did not argue below that income should have been imputed to Father based on his interest in the Property. Nor does she dispute that *Marquez* demonstrates that an increase in the value of the property over time does not constitute income to Father for purposes of calculating child support. Mother contends, however, that because Father sold his interest in the Property, he could have invested the proceeds in an income-producing property rather than exchanging it for similar property. Therefore, Mother argues, based on an attempted analogy to *Robinson,* the income the value of the property could have generated if placed in an income-producing investment should be attributed to Father for purposes of calculating his child support obligation.

¶ 14 The distinction is that in *Robinson* the court determined that vested, matured stock options, whether or not exercised, were income to the father for purposes of calculating his child support. 201 Ariz. at 330, 35 P.3d at 91. Thus, in *Robinson*, we only determined the value of the income the father actually received in the form of unexercised, vested, and matured stock options for purposes of calculating his child support obligation.

¶ 15 In this case, however, Father's real estate was not income to him for purposes of calculating child support.[2] Assuming, without deciding, that had Father chosen to transmute his real estate into income or an income-producing property and that the income would be attributable to him for purposes of calculating his child support obligation, Father nevertheless did not do so here. Although Father sold the Property, he exchanged it for other like-kind property that was neither income nor income-producing. *See Scott v. Scott*, 121 Ariz. 492, 495, 591 P.2d 980, 983 (1979) (finding that "[a] transformation of . . . assets from one form to another is not, in and of itself, a changed circumstance").

¶ 16 Mother argues that if we fail to impute income to Father, "we could have a situation in which Father [could] sell his newly acquired property on the minor child's 18th birthday, nine years from now . . . receiving the benefit of appreciating property values all the while." But Mother offers no argument as to how such a result would be different from that approved in *Marquez*. 132 Ariz. at 595, 647 P.2d at 1193 (holding that increases in the value of property do not support a request for a modification of spousal maintenance). Nor does she explain how this differs from the parties' situation under the original Decree, which she did not appeal. A prerequisite to the modification of an award of child support is a showing of changed circumstances that are substantial and continuing. A.R.S. § 25–327(A) (2007) ("[T]he provisions of any decree respecting maintenance or support may be modified or terminated *only* on a showing of changed circumstances that are substantial and continuing.") (emphasis added). The individual seeking modification has the burden of establishing changed circumstances with competent evidence. *Scott*, 121 Ariz. at 494, 591 P.2d at 982. Here, as the family court stated, "[Father] was a farmer and owned 7 million dollars worth of land. Currently, he is a farmer and owns 7 million dollars worth of land."

¶ 17 In its Decree, the court invited Mother to seek modification after the sale of the property, noting that "it may be appropriate . . . to impute income to [Father] from the investment of [the proceeds]." During the modification hearing, however, Mother presented no evidence that Father's circumstances had changed or that he received any income from the sale. Therefore, based on our review of the record, we cannot say that the family court abused its discretion by denying Mother's request.

¶ 18 In the alternative, Mother argues that the family court abused its discretion when it failed to deviate from the Child Support Guidelines and consider the value of Father's assets in calculating Father's child support obligation. The failure to do so, she contends, resulted in an award that was "inappropriate and unjust."

¶ 19 Again, however, because the court in the original Decree did not consider the value of Father's Property in calculating the child support obligation, the court's decision not to do so now cannot constitute a changed circumstance. Furthermore, given *Marquez* and *Burnette*, we do not have a sufficient basis in the record to reconsider the wisdom of the court's initial Decree from which, in any event, Mother did not appeal.

¶ 20 Finally, Mother maintains that Father's voluntary choice to exchange the Property as opposed to placing the sale proceeds into an income-bearing investment is compa-

---

**2.** To the extent that Mother believes that the Child Support Guidelines should attribute income to the parties based on the value of their sole and separate property in calculating child support, this is not the appropriate forum in which to make that argument. At any rate, as Mother concedes, the court, in calculating the child support obligation of the parties, did not value the income potential of either party's sole and separate property.

rable to a decision to work less for less pay, and thus the family court erred in failing to modify the support award. We disagree.

■ ¶ 21 In its Decree, the court found that Father earned $74,650 annually. During the modification hearing, Father submitted evidence that he continued his work as a farmer and calculated his annual earnings at $74,305. Mother presented no evidence establishing that there had been any significant change in Father's earnings since the Decree. Furthermore, Mother provides no authority for the proposition that Father is under an obligation to liquidate his sole and separate assets so that his income can be increased in order to justify increased child support payments. *See, e.g., Chen v. Warner,* 280 Wis.2d 344, 695 N.W.2d 758, 772 (2005) (holding that a mother was not required to liquidate her assets before obtaining an increase in the father's child support obligations); *Malkove v. Malkove,* 349 So.2d 52, 54 (Ala.App.1977) (holding that a husband was not required to liquidate his business assets in order to justify increased alimony payments). Therefore, because Mother failed to establish that Father's employment or earnings had undergone a substantial and continuing change subsequent to the Decree, we find no abuse of discretion in the family court's denial of Mother's request for modification of child support.

¶ 22 Both Mother and Father have requested an award of attorneys' fees on appeal. In the exercise of our discretion, we deny both requests.

## CONCLUSION

¶ 23 For the foregoing reasons, we affirm.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and DIANE M. JOHNSEN, Judge.

