NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BETSY JO POTTER, *Petitioner/Appellee*,

*v.*

PHILLIP TERRY POTTER, *Respondent/Appellant*.

No. 1 CA-CV 18-0357 FC
No. 1 CA-CV 18-0567 FC
(Consolidated)
FILED 9-24-2019

Appeal from the Superior Court in Maricopa County
No. FC2015-050659
The Honorable Roy C. Whitehead, Judge

**VACATED AND REMANDED**

COUNSEL

Joseph M. Huey PLC, Scottsdale
By Joseph M. Huey
*Counsel for Petitioner/Appellee*

Phillip Terry Potter, Scottsdale
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**P E R K I N S**, Judge:

¶1 Phillip Terry Potter ("Father") appeals from a child support order and the award of attorneys' fees to Betsy Jo Potter ("Mother"). For the reasons stated below, we vacate the child support order and the award of attorneys' fees and remand for reconsideration.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 The parties have one minor child, born in 2006. The January 2017 consent decree dissolving the parties' marriage ordered Father to pay child support to Mother and maintain the medical, dental, and vision insurance ("health insurance") for the child. Father, as the party providing health insurance, was obligated to provide Mother with a "current and accurate insurance card, and with all other information relating to the insurance claims carrier, including, but not limited to, the name, address, and telephone number of the insurance carrier, the policy number, the group number," and any other information necessary to submit an insurance claim on behalf of the child.

¶3 The original child support worksheet resulted in a support obligation of $394.21 per month, but, consistent with the parties' stipulation, the superior court ordered Father to pay $650 per month. Less than a year after entry of the consent decree, Father filed a petition to modify child support under the simplified procedure, *see* A.R.S. section 25-320, app. § 24(B) ("Guidelines"), based on his decreased income, Mother's increased income, and the increased cost of health insurance.

¶4 Instead of a simplified child support modification, this quickly evolved into a complex, contentious battle. Before the evidentiary hearing, the superior court held a settlement conference to address Mother's motion to enforce certain parts of the consent decree. At the settlement conference, the parties agreed to several things, many of which are not relevant here. The agreements were placed on the court record under Arizona Rule of Family Law Procedure 69. Pertinent to the health insurance issue on appeal, the parties agreed that Father provided Mother

with the plan documents, "proof of the cost of the plan," and a photocopy of the insurance card. Father confirmed that nothing was left out of the agreement, as stated on the record. The court ordered Mother's attorney to submit a written order reflecting the agreement. Unable to agree on the terms, both parties submitted a proposed agreement, neither of which is in the record on appeal. The precise terms of this agreement have been the subject of substantial litigation, described in more detail below.

¶5        The superior court held a hearing on Father's petition to modify child support in March 2018. According to Father's affidavit of financial information ("AFI"), from October 2017, his gross monthly income was $8,176 and he paid $528.18 to insure the child. Mother questioned Father's income and the child's insurance cost. Mother testified that her total monthly income, including wages and dividends, was $4,777 but acknowledged that this did not include the "spiffs" or sales incentives she earned. According to Mother's tax records, she earned $4,044.31 in spiffs in 2017.

¶6        Father offered no evidence to substantiate his claim that the child's health insurance cost $528.18 per month and the superior court did not include any amount for the child's health insurance cost on the child support worksheet. The court also rejected Mother's claim that Father was underemployed. The child support worksheet listed Father's gross monthly income as $12,498.

¶7        The superior court awarded Mother $17,500 in attorneys' fees, finding a substantial disparity in the parties' financial resources and that Father acted unreasonably in the litigation. The court later denied Father's motion for a new trial without comment and awarded Mother an additional $3,500 in attorneys' fees. The court entered a signed, final order denying Father's motion for a new trial in November 2018. Father timely appealed from the child support order and the final orders awarding attorneys' fees. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1), (5).

## DISCUSSION

### I.    Child Support

¶8        We will affirm the superior court's ruling on a petition to modify child support absent an abuse of discretion. *Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 7 (App. 2015). An abuse of discretion exists when the record, viewed in the light most favorable to upholding the court's decision, does not support the ruling. *Id.* The interpretation of statutes and guidelines is a question of law reviewed *de novo*. *Id.*

### A.     Father's Gross Income

¶9         Father contends the superior court abused its discretion in attributing a $12,498 monthly income to him because the evidence established that his monthly income was $8,176, and the court found he was not underemployed. Mother reasons the amount is justified because Father earned that salary in the past and did not provide sufficient proof of his current salary.

¶10         When a parent is unemployed or underemployed, the court may impute income up to that parent's full earning capacity if it finds the reduction in income is voluntary or unreasonable. *Little v. Little*, 193 Ariz. 518, 521, ¶ 6 (1999). If a parent's voluntary decision to change employment places a child "in financial peril," the court generally should not reduce that parent's support obligation. *Id.* at 522, ¶ 12. The court may attribute income based upon its assessment of a parent's education, past work experience, and earning capacity. *See, e.g., Taliaferro v. Taliaferro*, 188 Ariz. 333, 337 (App. 1996); *Williams v. Williams*, 166 Ariz. 260, 266 (App. 1990).

¶11         From 2012 to 2015, Father worked in Seattle earning approximately $12,498 per month. He testified that his weekly commute from Phoenix to Seattle cost him approximately $2000 a month, and he was gone for several days each week. Father explained that he left the position because he was asked to relocate to Seattle instead of commuting. Further, the long-distance commute was not feasible now that he had equal parenting time. Father testified his current salary is commensurate with his education and experience, and that it is actually above average for similar positions elsewhere.

¶12         Father provided paystubs from July 25, 2017, through September 24, 2017. The paystubs and his October 2017 AFI show Father earns $8,176 per month. Mother argued that Father could earn $12,498 per month based on his previous earnings in Seattle and before that at Arizona State University. The evidence showed the reasons Father left his most recent position in Seattle were not unreasonable, and his job at ASU was more than five years before the hearing.

¶13         The superior court had the discretion to weigh the evidence regarding Father's employment and determined he was not underemployed. We do not reweigh the evidence on appeal. *See Clark v. Kreamer*, 243 Ariz. 272, 276, ¶ 14 (App. 2017). The record supports the court's conclusion that Mother failed to establish that Father was underemployed. There was also no evidence that Father's lower pay in Arizona placed the

child in financial peril. *See Little*, 193 Ariz. at 522, ¶ 12. Although the court found Father was *not* underemployed at his current job, the child support order was based on his former monthly salary of $12,498. Based on the court's written findings, however, the child support obligation should be calculated based on Father's current $8,176 monthly income. The court made no findings that support attributing the higher income to Father on the child support worksheet. Accordingly, we remand for a recalculation based on Father's monthly income of $8,176.

### B.     Mother's Income

**¶14**          The superior court found Mother's monthly income was $4,770. Father argues Mother's current income is higher, and the court failed to include the spiffs/sales incentives Mother earns regularly. Mother testified that her monthly wages averaged $4,487, and she had regular dividend earnings of $290 per month, for a total income of $4,777.  Her AFI was marked as an exhibit but not admitted.

**¶15**          Father offered two sets of paystubs showing Mother's monthly income ranged from $6,318.57 in mid-2017 to $6,084.20 in early 2018. Mother, however, testified that her earnings varied each pay period depending on her overtime and bonuses. To determine her 2017 gross monthly income, Mother averaged the income reported on her 2017 W-2. However, Mother conceded that she did not include any income from spiffs/sales incentives in her AFI because she had not yet received the 1099 tax forms from 2017 with that information. Mother acknowledged that, in 2017, she earned an additional $4,044.31, or $337.02 per month, in spiffs/sales incentives she did not include on her AFI.

**¶16**          We agree with Mother that the superior court was within its discretion to average her fluctuating monthly income. Guidelines § 5(A) ("Seasonal or fluctuating income should be annualized."). But based on Mother's admission, the figure Mother reported and on which the court relied did not include the additional $337 monthly income from spiffs/sales incentives. Mother did not claim this income was not continuing or recurring. Therefore, we conclude the court abused its discretion by failing to include this additional income in determining Mother's average monthly gross income. *Cf.* Guidelines § 5(A) ("Income from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes."). We remand for the court to recalculate the child support obligation using Mother's total earnings, including the income from spiffs/sales incentives.

### C.      Health Insurance

**¶17**      When calculating the child support obligation, the superior court must add the cost of the child's medical, dental, and vision insurance, if any. Guidelines § 9(A). The court shall only add the cost to insure the child. *Id.* "If coverage is applicable to other persons, the total cost shall be prorated by the number of persons covered." *Id.* Here, the court found Father failed to substantiate his claim that he paid $528.18 per month for the child's health insurance. Accordingly, in calculating the child support obligation, the court did not include *any* amount for health insurance.

**¶18**      Father contends this was an abuse of discretion because (1) the Guidelines direct the court to include the cost of health insurance, (2) the evidence showed Father was paying for the child's health insurance, and (3) Mother previously agreed that Father provided proof of insurance coverage. Mother argues the court properly calculated child support because Father failed to establish that he paid for the child's health insurance without interruption since the decree was entered in January 2017.

**¶19**      The question of whether and how much Father paid for the child's health insurance is complicated by a dispute over the terms of an agreement reached at a March 9, 2018 settlement conference. This agreement encompassed other issues besides health insurance. At the settlement conference, the parties stated the following on the record regarding health insurance:

> MR. HUEY [Mother's Attorney]: Oh, with regard to the insurance card issue, Father – the component of [Mother's] motion to compel is that Father provide the insurance documentation required pursuant to the decree and provide Mother a card from the insurance carrier that she can utilize to obtain health insurance benefits for the child.
>
> Father has agreed – well, Father has provided the plan documents. He has now provided proof of the cost of the plan. And he has provided a copy, a photocopy, of the insurance card. Father agrees within 15 days of today's date to contact the insurance carrier and request that a hard copy of the card, front and back, be provided so that he may give it to Mother. Father shall deliver that to Mother's counsel's office. . . .

THE COURT: Thank you. Mr. Potter, do you think anything was left out?

MR. POTTER: No, sir, I don't believe so.

The parties have attempted to reduce this agreement to writing without success. In fact, while this appeal was pending, Mother made a filing in superior court in an attempt to finalize the terms of this agreement. Despite this litigation, the agreement, as stated in the March 9, 2018 record, does not indicate how much Father paid for the child's health insurance. The "cost of the plan" does not establish how much Father spent to insure the child. Thus, contrary to Father's position, the agreement quoted above does not resolve the issues raised at trial and on appeal. Because the agreement does not resolve the issue on appeal, we do not address Father's arguments regarding judicial estoppel, Mother's alleged collateral attack on the agreement, the court's alleged failure to enforce the agreement, and the alleged fraud upon the court.

¶20        The evidence established that Father had insured the child since July 2017. Mother learned, in June 2017, that the child's insurance was cancelled as of March 1, 2017, for nonpayment. But Mother acknowledged the child's insurance coverage resumed in July 2017. Thus, both the cancellation and reinstatement occurred *before* Father filed his petition to modify in October 2017. Mother did not allege that Father failed to pay for the child's health insurance *after* October 2017. This is also corroborated by Father's paystubs from July 25, 2017 through November 10, 2017, which show the total health insurance premiums deducted from his paychecks.

¶21        On appeal, Mother argues that Father did not provide any evidence that the child had insurance coverage at the time of the March 2018 hearing. At trial, however, Mother only argued that Father did not establish how much he was paying for the child's health insurance. As noted above, the evidence established that Father provided health insurance for the child since July 2017, but there was no independent evidence supporting Father's claim that he paid $528.18 for the child's insurance. Father's paystubs do not break down how much of his total insurance premium is attributed to the child. Father's AFI lists the amount attributed for the child's insurance as $528.18, but he offered no independent documentation to verify that figure. The court need not accept Father's unsubstantiated testimony regarding the cost of the child's insurance. *See Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987) ("The trial court is not bound to accept as true the uncontradicted testimony of an interested party.").

¶22        At the hearing, Father claimed information regarding the cost of the child's health insurance was available if it needed to be verified, but he did not offer it into evidence. This information, however, was necessary for the court to calculate the child support obligation. Because we are remanding for recalculation of the child support based on the parties' income, we instruct the superior court to reopen the evidence and allow Father to provide the evidence of the amount he paid for the child's health insurance beginning October 1, 2017. This may require separate worksheets for any periods during which the premiums may have increased or decreased. If Father does not provide a breakdown of the amount paid to insure the child, the court shall prorate the total cost by the number of persons covered, as provided in Guidelines § 9(A).

## II.    Attorneys' Fees

¶23        The superior court awarded Mother a portion of the attorneys' fees she incurred in responding to Father's petition to modify child support and motion for a new trial. Because we vacate the child support order and remand for reconsideration, we vacate the award of attorneys' fees. In light of this disposition, we need not address Father's arguments regarding the award of attorneys' fees. However, we will address Father's claim that he was precluded from establishing there was no financial disparity between the parties because this may be an issue on remand. *See Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶ 17 (App. 2019) (court may address other arguments raised by a party if the issues may occur on remand).

¶24        The superior court awarded fees based on A.R.S. § 25-324. Specifically, the order awarding fees for responding to the petition to modify was based on the substantial disparity of financial resources as well as Father's unreasonable conduct. Although the record did not include Mother's AFI, her testimony and paystubs provided sufficient evidence to support the finding of a financial disparity.

¶25        Father contends he was unable to challenge this evidence because a protective order prevented him from discovering Mother's additional financial resources. The court issued this protective order after Father sought to "compel" a substantial amount of discovery related to several motions predating the petition to modify child support. Mother sought a protective order from Father's excessive discovery requests. The court granted an order precluding Father from seeking information "not relevant" to the issues before the court and requiring any discovery motion to specify what items Mother allegedly withheld.

**¶26**      Mother's financial resources were relevant to the issues of the child support and attorneys' fees. Although Father objected to Mother's fee requests and noted her general lack of discovery, he did not specify what discovery Mother allegedly withheld, as required by the order. Without such information, the superior court could not determine if Mother improperly withheld relevant information.

**¶27**      On remand, Father must comply with the protective order if he seeks additional discovery related to Mother's financial resources. The protective order does not preclude discovery of relevant information, but, because the court found Father's prior discovery requests were improper, Father must specify what information he seeks.

**¶28**      We deny Mother's request for attorneys' fees and costs on appeal because neither party took unreasonable positions on appeal, and we lack current information regarding the parties' financial resources. A.R.S. § 25-324. As the successful party, Father is entitled to an award of costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure ("ARCAP") 21. *See* A.R.S. § 12-342.

## III.    Pending Motions

**¶29**      Father filed a motion for sanctions (July 26, 2019) and a motion for clarification (September 11, 2019). We deny both motions.

**¶30**      Father sought sanctions after Mother filed a notice of lodging order re: agreement reached pursuant to Rule 69, ARFLP in superior court (filed July 19, 2019). Father argued that Mother's proposed order altered the agreement and violated this court's April 24, 2019 order declining to revest jurisdiction in the superior court to resolve issues pertaining to the Rule 69 agreement. We cannot ascertain whether Mother's proposed order is consistent with or violated any agreements reached on March 9, 2018 because the proposed order is not attached to the Notice.

**¶31**      Moreover, this court's April 24, 2019 order specifically noted that the "superior court retains jurisdiction to rule on any matters that do not negate or frustrate this appeal." According to the March 9, 2018 transcript, the parties agreed to several items unrelated to this appeal. For example, Father agreed to authorize the release of the child's personal injury proceeds, the parties agreed to submit the names of accountants to review their 2014 tax returns, Mother agreed to withdraw her motion to appoint a special real estate commissioner, and Father agreed to arrange a conference call with a loan servicer to discuss removing Mother from a lien. Although we cannot comment on Mother's proposed order because it is not

in the record, Mother asserts that her proposed order seeks only to enforce matters not related to the appeal. The superior court may sign an order regarding issues that are unrelated to the child support order while this appeal is pending. *See State v. O'Connor*, 171 Ariz. 19, 22 (App. 1992). For these reasons, we deny Father's motion for sanctions.

**¶32**　　　　Father's September 11, 2019 motion requests clarification of this court's April 24, 2019 Order Re: Motion to Revest and Motion to Dismiss / Strike. To the extent Father seeks available relief from this court, we deny his motion.

## CONCLUSION

**¶33**　　　　We vacate the child support order and the award of attorneys' fees and remand for reconsideration consistent with this decision. We award Father his costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:　AA