975 P.2d 108

**In re the Marriage of Lisa L. LITTLE, Petitioner–Appellee,**

v.

**Billy L. LITTLE, Jr., Respondent– Appellant.**

**No. CV–98–0305–PR/A.**

Supreme Court of Arizona, En Banc.

March 19, 1999.

See publication Words and Phrases for other judicial constructions and definitions.

**520**

Philip A. Seplow, Phoenix, Attorney for Petitioner–Appellee.

Phoenix Billy L. Little, Jr., Tempe, Respondent–Appellant pro se.

## O P I N I O N

McGREGOR, Justice.

¶ 1 In this opinion, we consider the standard courts should apply in determining whether a non-custodial parent's voluntary decision to leave his or her employment to become a full-time student constitutes a sufficient change in circumstances to warrant a downward modification of the parent's child support obligation.

### I.

¶ 2 The parties divorced in November 1995. The court ordered appellant Billy L. Little, Jr., an Air Force lieutenant, to pay $1,186 per month for the support of his two young children. In August 1996, appellant resigned his commission in the Air Force, a position that paid $48,000 in yearly salary plus benefits, and chose to enroll as a full-time student at Arizona State University College of Law rather than to seek employment.

¶ 3 Upon leaving the Air Force, appellant petitioned the court to reduce his child support obligation to $239 per month. The trial court concluded that appellant had failed to prove a substantial and continuing change of circumstances in accordance with Arizona Revised Statutes (A.R.S.) §§ 25–327.A and 25–503.F, and denied his request for modification. The trial court specifically found that appellant voluntarily left his employment to further his own ambition; that he failed to consider the needs of his children when he made that decision; and that to reduce his child support obligation would be to his children's immediate detriment and their previously established needs. The trial court did reduce appellant's child support obligation to $972 per month on the ground that appellee Lisa L. Little had acquired a higher paying job.[1]

¶ 4 The court of appeals, applying a good faith test to determine whether appellant acted reasonably in voluntarily leaving his employment, held that the trial court abused its discretion in finding that appellant's decision to terminate his employment and pursue a law degree was unreasonable. Because we hold that a court, rather than rely upon a good faith test, must balance a number of factors to determine whether to modify a child support order to reflect a substantial and continuing change of circumstances, we vacate the opinion of the court of appeals and affirm the decision of the trial court.

### II.

#### A.

¶ 5 The decision to modify an award of child support rests within the sound discretion of the trial court and, absent an abuse of that discretion, will not be disturbed on appeal. *See Fought v. Fought*, 94 Ariz. 187, 188, 382 P.2d 667, 668 (1963). An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is "devoid of competent evidence to support" the decision. *Id.*

#### B.

¶ 6 Arizona's law governing modification of child support orders, codified at

---

1. Throughout law school, appellant has financed his education and child support obligation through student loans and, according to his own assertions, has paid child support at the average rate of $800 per month.

A.R.S. §§ 25–327.A and 25–503.F, states that a court should modify a child support order only if a parent shows a substantial, continuing change of circumstances. Guidelines adopted by this court provide procedural guidance in applying the substantive law. *See* A.R.S. § 25–501.C; Appendix to A.R.S. § 25–320, Child Support Guidelines (Guidelines); *see also In re Marriage of Pacific,* 168 Ariz. 460, 815 P.2d 7 (App.1991) (holding that the Guidelines are not substantive law, but function rather as a source of guidance to trial courts in applying the substantive statutory and case law). According to the Guidelines, when a parent is unemployed or working below his or her full earning potential, a trial court calculating the appropriate child support payment may impute income to that parent, up to full earning capacity, if the parent's earnings are reduced voluntarily and not for reasonable cause. *See* Guidelines 4.e. The Guidelines also state that the trial court may elect not to impute income to a parent if he or she is enrolled in reasonable occupational training that will establish basic skills or is reasonably calculated to enhance earning capacity. *See* Guidelines 4.e.2. Significantly, both the governing statute and the Guidelines recognize that a parent's child support obligation is paramount to all other financial obligations, and that a parent has a legal duty to support his or her biological and adopted children. *See* A.R.S. § 25–501.C; *see also* Guidelines 2.b, d.

## C.

¶ 7 Arizona's appellate courts have considered whether a court should modify a child support order to reflect a change in an obligor parent's employment in the contexts of incarceration, sale of a business, retirement, layoff, and strike.[2] We have not, however, considered the issue of what effect a parent's voluntary decision to forego employment and become a full-time student has upon that parent's obligation to pay child support.

¶ 8 A number of other jurisdictions have considered the issue that confronts us. Courts in sister jurisdictions have applied one of three tests to determine whether to modify a child support order when a parent voluntarily terminates his or her employment. *See* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine,* 29 CONN. L. REV. 647, 658 (1997). The first of these tests, the good faith test, "considers the actual earnings of a party rather than his earning capacity, so long as" he or she acted in good faith and not "primarily for the purpose of avoiding a support obligation" when he or she terminated employment. *Id.* The second test, designated the strict rule test, "disregards any income reduction produced by voluntary conduct and . . . looks at the earning capacity of a party in fashioning a support obligation." *Id.* The third test, referred to as the intermediate test, balances various factors to determine "whether to use actual income or earning capacity in making a support determination." *Id.* Each of the tests evidences its own strengths and weaknesses, and each reflects the public policy of its adopting jurisdiction.

¶ 9 Other jurisdictions have detected three fundamental flaws in the good faith test, which assigns the highest value to the obligor parent's individual freedom of choice. First, the test erroneously "assumes that a divorced or separated party to a support proceeding will continue to make decisions in the best overall interest of the family unit," when often, in fact, the party will not. *Id.* at 663. Second, the test fails to attach sufficient importance to a parent's existing obligation to support his or her children. *See id.* at 664. As one court explained, the good faith test allows a parent to be "free to retire, take a vow of poverty, write poetry, or hawk roses in an airport, if he or she sees fit," provided only that his or her motivation for acting is not to shirk a child support obligation. *Deegan v. Deegan,* 254 N.J.Super. 350, 603 A.2d 542, 546 (1992). Third, once the party seek-

---

2. *See State ex rel. Dep't of Econ. Sec. v. McEvoy,* 191 Ariz. 350, 955 P.2d 988 (App.1998) (incarceration); *Burnette v. Bender,* 184 Ariz. 301, 908 P.2d 1086 (App.1995) (sale of business); *Reeves v. Reeves,* 146 Ariz. 471, 706 P.2d 1238 (App. 1985) (retirement); *Fletcher v. Fletcher,* 137 Ariz. 497, 671 P.2d 938 (App.1983) (layoff); *Platt v. Platt,* 17 Ariz.App. 458, 498 P.2d 532 (App.1972) (strike).

ing a downward modification provides a seemingly good faith reason for leaving employment, the burden of proof often shifts to the party opposing the reduction to then show that the reason given is merely a sham. Even if the burden of proof does not shift, the trial court is still left with the difficult task of evaluating a party's subjective motivation. *See* Becker, *supra*, at 664–65. While all those factors influence our decision to reject the good faith test, we regard the primary shortcoming of the good faith test as being its focus upon the parent's motivation for leaving employment rather than upon the parent's responsibility to his or her children and the effect of the parent's decision on the best interests of the children.

¶ 10 The strict rule test also contains a fatal flaw. This test is too inflexible because it considers only one factor, the parent's earning capacity, in determining whether to modify a child support order when a parent voluntarily leaves employment. *See* Becker, *supra*, at 668. We decline to adopt the strict rule test because it allows no consideration of the parent's individual freedom or of the economic benefits that can result to both parent and children from additional training or education.

¶ 11 We reject both these extreme approaches and instead adopt an intermediate balancing test that considers a number of factors, consistent with A.R.S. §§ 25–327.A, 25–503.F, 25–501.C, and the Guidelines.

### D.

 ¶ 12 Arizona law prescribes that "[t]he obligation to pay child support is primary and other financial obligations are secondary." A.R.S. § 25–501.C. Thus, the paramount factor a trial court must consider in determining whether a voluntary change in employment constitutes a substantial and continuing change in circumstances sufficient to justify a child support modification is the financial impact of the parent's decision on the child or children the support order protects. If a reduction in child support due to a non-custodial parent's voluntary decision to change his or her employment status places a child in financial peril, then the court gener-

ally should not permit a downward modification.

 ¶ 13 In many instances, the impact on the children will not be so severe as to place the children in peril. In those circumstances, courts must consider the overall reasonableness of a parent's voluntary decision to terminate employment and return to school. The answers to several questions will provide relevant information. The court should ask whether the parent's current educational level and physical capacity provide him or her with the ability to find suitable work in the marketplace. If so, the decision to leave employment is less reasonable. *See Patterson v. Patterson*, 102 Ariz. 410, 415, 432 P.2d 143, 148 (1967) (refusing to reduce a father's child support award on the grounds that "no showing was made that he lacked the ability or capacity to work" and because a father's obligation to his children "cannot be diminished because he preferred to be idle rather than industrious or [that] ... his own improprieties ... caused a diminution in his medical practice income"). In contrast, answers to other questions make the parent's decision to leave employment more reasonable. If the additional training is likely to increase the parent's earning potential, the decision is more likely to be found reasonable. *See* Guidelines 4.e.2; *see also Rubenstein v. Rubenstein*, 655 So.2d 1050, 1052 (Ala.Civ.App.1995) (holding that the trial court did not abuse its discretion in failing to impute additional income to a father who, while completing a residency program that would increase his future income potential, continued to fulfill his current support obligation). The court should also consider the length of the parent's proposed educational program, because it matters whether the children are young enough to benefit from the parent's increased future income. *See Overbey v. Overbey*, 698 So.2d 811, 815 (Fla. 1997) (considering as a factor in its refusal to reduce a father's child support obligation the fact that "the older child will reach majority before the father finishes school" and the younger child will do so "only a few years thereafter"). The court also should inquire whether the parent is able to finance his or her child support obligation while in school through other resources such as student

loans or part-time employment. *See Baker v. Grathwohl,* 97 Ohio App.3d 116, 646 N.E.2d 253, 255 (1994) (discussing the fact that the trial court was not convinced that the obligor father would not be able to obtain part-time employment during law school). Finally, the court should consider whether the parent's decision is made in good faith, as a decision to forego employment and return to school usually will not be reasonable or made in good faith if the parent acts to avoid a child support obligation.

¶ 14 We do not intend to suggest that the factors listed above are exhaustive of the relevant areas of inquiry. The primary task for a trial court is to decide each case based upon " 'the best interests of the child,· not the convenience or personal preference of a parent.' " *Department of Soc. Servs. v. Ewing,* 22 Va.App. 466, 470 S.E.2d 608, 611 (1996) (quoting *Brody v. Brody,* 16 Va.App. 647, 432 S.E.2d 20, 22 (1993)). Trial courts therefore retain discretion to " 'consider the nature of the changes and the reasons for the changes, and . . . determine whether, under all the circumstances, a modification is warranted.' " *In re Marriage of Clyatt,* 267 Mont. 119, 882 P.2d 503, 505 (1994) (quoting *In re Marriage of Rome,* 190 Mont. 495, 621 P.2d 1090, 1092 (1981)).

¶ 15 We believe the balancing test described above comports not only with Arizona's public policy, but also with a national policy trend that favors strictly enforcing child support obligations. Several states, including Alabama, Florida, Maine, Montana, New Mexico, Ohio, and Virginia, recently have held that a parent's voluntary return to school does not justify a downward modification of his or her child support obligation. *See Overbey,* 698 So.2d at 811; *Ewing,* 470 S.E.2d at 608; *Harvey v. Robinson,* 665 A.2d 215 (Me.1995); *Clyatt,* 882 P.2d at 503; *Baker,* 646 N.E.2d at 253; *Johnson v. Johnson,* 597 So.2d 699 (Ala.Civ.App.1992); *Wolcott v. Wolcott,* 105 N.M. 608, 735 P.2d 326 (N.M.App.1987). Moreover, the federal government has passed laws recognizing that the duty to support one's children is paramount. For instance, federal bankruptcy law excepts debts "to a . . . child of the debtor, for . . . support of such . . . child, in connec-tion with a separation agreement, divorce or other order of a court of record" from discharge in bankruptcy proceedings. 11 U.S.C.A. § 523(a)(5) (West Supp.1998). Recently-enacted federal criminal legislation provides that a parent who "wilfully fails to pay a support obligation with respect to a child who resides in another State shall be punished" by fine and/or up to six months imprisonment for the first offense, and by fine and/or up to two years imprisonment for subsequent offenses. 18 U.S.C.A. § 228 (West Supp.1998). In addition, Congress authorized the Bureau of Justice Assistance to provide grants to states "to develop, implement, and enforce criminal interstate child support legislation and coordinate criminal interstate child support efforts." 42 U.S.C.A. § 3796cc (West 1994).

¶ 16 The court of appeals, rather than look to this development in public policy, instead relied upon a forty-year-old decision, *Nelson v. Nelson,* 225 Or. 257, 357 P.2d 536 (1960), to support its holding. In *Nelson,* the court held that a father "may in good faith make a change in occupation, fully aware that the change will reduce his ability to meet his financial obligations to his children." 357 P.2d at 538. The court acknowledged that a father "[a]dmittedly . . . has a duty to support his children," but found a "judgment of what is fair must include a consideration not only of the child's economic circumstances, but of his father's as well. In the proper case it may be just to reduce the child's standard of living if that is necessary to alleviate his father's financial hardship." *Id.* at 539. The court further opined that a father's child support obligation should be reduced if he "wish[es] to turn to another occupation, even though it calls for a permanent reduction in his income, because it holds the prospect of a more satisfying life for him." *Id.* at 540.

¶ 17 We reject the reasoning of *Nelson* for several reasons. First, its holding elevates a parent's wishes and financial status above the best interests of his children. Second, the decision clearly contradicts our state legislature's statutory mandate that "[t]he obligation to pay child support is primary and all other financial obligations are secondary." A.R.S. § 25–501.C. Moreover, we disagree

with the notion that attending school full-time and fulfilling one's child support obligation are mutually exclusive options, given that a divorced or separated parent can fill income gaps by participating in student financial aid programs and/or obtaining part-time employment. The court of appeals erred when it relied on *Nelson.*

¶ 18 Applying the balancing test to the facts involved here, we conclude that the trial court did not abuse its discretion when it refused appellant's request for a downward modification of his child support obligation. First, the negative impact of the requested reduction on appellant's children, had the trial court granted it, would have been substantial. The trial court found that such a reduction "would be to the children's immediate detriment and their previously established needs." The record also reveals that appellee earns only $1,040 per month in salary. This income places the Little family well below the 1998 federal poverty level.[3] Without their father's support, appellant's children would face significant economic hardship. Second, appellant holds Bachelor of Arts and Master of Business Administration degrees. Appellant, by asking the trial court to assume he will earn more money when he completes law school than he could have earned in the private business sector, invited the court to engage in speculation. Therefore, while appellant's children are young enough to benefit from any increased income their father earns, the speculative nature of the increase justified giving this factor minimal weight. Third, the record does not reflect that appellant, upon leaving the Air Force, even attempted to obtain suitable employment in the Phoenix metropolitan area that would have allowed him to be close to his children and fulfill his financial obligations to them. Fourth, appellant has been able to finance his law school education and most of his child support obligation through student loans. Nothing in the record suggests that appellant is unable to obtain part-time employment to fulfill the remainder of his child support obligation. Finally, the trial court specifically found that appellant failed to act in good faith and instead endeav-

ored to further his own ambition when he chose to forego employment and become a full-time student. Thus, the trial court did not abuse its discretion when it determined that appellant failed to act in his children's best interests when he voluntarily left full-time employment to enroll in law school.

### E.

¶ 19 We realize that the "responsibilities of begetting a family many times raise havoc with dreams. Nevertheless, the duty [to support one's children] persists, with full authority in the State to enforce it." *Romano v. Romano,* 133 Vt. 314, 340 A.2d 63, 64 (1975). We therefore vacate the opinion of the court of appeals and affirm the decision of the trial court.

THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, concur.

---

**3.** The 1998 Department of Health and Human Services Poverty Guidelines list the poverty level for a family of three as $13,650 annually. *See* 63 Fed.Reg. 9235–38 (1998). Mrs. Little's annual salary is $12,480.