NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In re the Marriage of:

NACCHAL NACHIAPPAN, *Petitioner/Appellant*,

*v.*

RAMANATHAN SUBRAMANIAN, *Respondent/Appellee*.

No. 1 CA-CV 13-0396
FILED 5-1-2014

---

Appeal from the Superior Court in Yuma County
No. S1400DO201100326
The Honorable Lisa W. Bleich, Judge

**AFFIRMED**

---

COUNSEL

The Murray Law Offices, PC, Scottsdale
By Stanley David Murray
*Counsel for Petitioner/Appellant*

Torok Law Office, PLLC, Yuma
By Gregory T. Torok
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

_____

**H O W E**, Judge:

¶1        Nacchal Nachiappan (Wife) appeals various provisions in the final decree ending her marriage to Ramanathan Subramanian (Husband). Finding no error, we affirm the decree.

**FACTS AND PROCEDURAL HISTORY**

¶2        In June 2007, Wife and Husband married in India. Wife and Husband then moved to California, where their two minor children were born.

¶3        In June 2010, Wife and the children moved to Arizona without Husband. In the move, Wife took items from Husband, including his permanent resident identification card ("green card"). Husband repeatedly asked to see the children, but Wife did not allow visits until November 2010.

¶4        In January 2011, the youngest child had open heart surgery. When complications developed, the child was airlifted to another hospital. Wife never notified Husband that the child had been airlifted.

¶5        Wife petitioned for legal separation from Husband in March 2011 and sought emergency orders, alleging domestic violence and seeking sole custody of the children without notice. The superior court granted Wife sole, temporary physical custody of the children.

¶6        In March and April of 2011, Wife sent two emails to Husband's employer. Her first email stated, in pertinent part, that "I am writing to you regarding [Husband] in order to inform you of his character before you consider supporting him in his further efforts toward gaining custody over our children and other immigration issues." Her second email stated that "[y]ou are best positioned to assist [Husband] in his efforts in gaining custody and his green card . . . ." Wife admitted that she was aware that these emails could have affected Husband's immigration status.

**¶7**　　　　In late April 2011, Wife petitioned for—and obtained—an order of protection against Husband. The court ordered that "[Wife] shall continue to have temporary sole custody of the minor children. The [Husband] shall have parenting time with the minor children 2 weekends per month . . . ."

**¶8**　　　　In May 2011, Wife requested temporary child support, spousal maintenance, and attorney's fees. The court ordered Husband to pay wife $1,343 per month in child support, effective September 1, 2011, and $1,500 per month in spousal maintenance, effective September 1, 2011, for three months. The court reserved judgment on past support and attorney's fees for trial, but ordered Wife to return Husband's green card.

**¶9**　　　　In November 2011, Husband requested that Wife's petition for legal separation be converted into a petition to dissolve their marriage. Wife then filed a petition for dissolution, seeking sole custody of their children, child support, equitable division of community property and debts, and attorney's fees.

**¶10**　　　　The family court dissolved Wife and Husband's marriage in September 2012. The court awarded Wife and Husband joint legal custody of the children and ordered Husband to pay Wife $1,083 per month in child support and $11,000 in past child support and spousal maintenance. The court also ordered Wife to pay Husband $24,865 in attorney's fees.

**¶11**　　　　In October 2012, Wife moved for a new trial to amend the provisions of the dissolution order, arguing that the family court "failed to give its reasons why joint physical custody [was] in the children's best interests." Although the family court denied Wife's request for a new trial, it amended its original findings and orders to explain that joint custody was in the children's best interests because it will "prevent the Mother from excluding the Father" on "important issues regarding the children."

**¶12**　　　　In May 2013, the family court issued a final, amended decree of dissolution that awarded Wife and Husband "joint legal decision-making authority over the minor children," with Wife having "final decision-making authority as to medical decisions only after diligent consultation with" Husband. The court explained that "[t]he best interests of the children will be served if the parents are awarded joint legal decision making authority [because it] will prevent the Father from being excluded from important issues regarding the children." The decree also allocated parenting time between Wife and Husband. The decree required Husband to pay Wife $11,159 child support arrearages and $9,500 in

spousal maintenance arrearages; required Husband to pay Wife $752.50 in community property equalization payment; and ordered Wife to pay Husband $24,865 in attorney's fees.

## DISCUSSION

¶13        Wife argues that the family court erred in its joint legal decision-making with non-specific parenting time, child support, and attorney's fees awards.  We reject her arguments.

### (a) Legal Decision-Making And Parenting Time

¶14        Wife argues that the family court erred in awarding joint legal decision-making authority for the children to her and Husband. Although Wife concedes that the court made the "required statutory findings under [A.R.S. § 25-403]," she contends that "some of the trial court's findings are not supported by the record . . .  and actually show[] that Mother should have been awarded sole decision-making authority." She also argues that the 75 days "of parenting time allocated to [Husband]. . . was also erroneous and not supported by the record."

¶15        We review the family court's legal decision-making and parenting time decisions for an abuse of discretion. *Nold v. Nold,* 232 Ariz. 270, 273 ¶ 11, 304 P.3d 1093, 1096 (App. 2013). Because the family court is better situated to evaluate testimony and other evidence, *Acuna v. Kroack,* 212 Ariz. 104, 113 ¶ 35, 128 P.3d 221, 230 (App. 2006), we assess only whether "the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision," *Little v. Little,* 193 Ariz. 518, 520 ¶ 5, 975 P.2d 108, 110 (1999). As a reviewing court, we do not reweigh conflicting evidence and defer to the family court's determination of credibility of the witnesses. *In re Estate of Pouser*, 193 Ariz. 574, 579 ¶ 13, 975 P.2d 704, 709 (1999); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347–48 ¶ 13, 972 P.2d 676, 680–81 (App. 1998).

¶16        In making a legal decision-making determination, the family court is required to consider "all factors that are relevant to the child's physical and emotional well-being," including the factors enumerated in A.R.S. § 25–403(A).[1] In a contested legal decision-making case, the court

---

1        Those factors include: (1) the past, present, and potential future relationship between the parent and child; (2) the interaction and interrelationship of the child with the child's parent or parents, the child's

must make specific findings on the record regarding "all relevant factors and the reasons for which the decision is in the best interests of the child[ren]." A.R.S. § 25–403(B).

**¶17** The family court properly considered the relevant factors and the record supports the court's determination that joint legal decision-making was in the children's best interests. As the court noted, Wife has a history of interfering with Husband's relationship with the children. When Wife moved to Arizona, she did not allow Husband to see the children until November 2010. Wife also failed to notify Husband when their youngest child was airlifted to a pediatric intensive care unit. Further, Wife attempted to affect Husband's immigration status by taking his green card and emailing Husband's employers about their marital troubles, which could have hindered Husband's ability to visit the children. Although Wife also alleged that Husband committed acts of domestic violence against her, Husband denied those allegations. After weighing the credibility of Wife's and Husband's testimony, the family court concluded that "[s]ignificant domestic violence ha[d] not occurred in this case." *See* A.R.S § 25-403.03(A) (prohibiting joint legal decision making if there is a finding of significant domestic violence or a significant history of domestic violence). Accordingly, the court did not abuse its discretion by awarding Wife and Husband joint-custody of the children and awarding Husband 75 days of parenting time.

---

siblings and any other person who may significantly affect the child's best interest; (3) the child's adjustment to home, school, and community; (4) if the child is of suitable age and maturity, the wishes of the child as to legal decision-making and parenting time; (5) the mental and physical health of all individuals involved; (6) which parent is more likely to allow the child frequent, meaningful, and continuing contact with the other parent; (7) whether one parent intentionally misled the court to cause an unnecessary delay, to increase the cost of litigation, or to persuade the court to give a legal decision-making or a parenting time preference to that parent; (8) whether there has been domestic violence or child abuse; (9) the nature and extent of coercion or duress used by a parent in obtaining an agreement regarding legal decision-making or parenting time; (10) whether a parent has complied with chapter 3 article 5 of Title 25 (requiring completion of a domestic relations education program); and (11) whether either parent was convicted of an act of false reporting of child abuse or neglect. A.R.S. § 25–403(A).

**(b) Child Support**

¶18        Wife next argues that the family court erred in calculating child support by (1) failing to make the child support award retroactive to the date of the parties' legal separation; (2) attributing to her a monthly income of $9,750; and (3) allocating Husband 75 days parenting time. Rejecting her arguments, we address each in turn.

¶19        The family court has discretion in determining child support, and its decision will not be disturbed absent an abuse of discretion. *Little,* 193 Ariz. at 520, ¶ 5, 975 P.2d at 110. An abuse of discretion occurs "when the record, viewed in the light most favorable to upholding the [family] court's decision, is 'devoid of competent evidence to support' the decision." *Id.* This Court reviews de novo the family court's interpretation of the Arizona Child Support Guidelines (Guidelines), A.R.S. § 25–320. *See In re Marriage of Robinson and Thiel,* 201 Ariz. 328, 331 ¶ 5, 35 P.3d 89, 92 (App. 2001).

¶20        Wife first contends that the family court failed "to make the [child] support awards retroactive to the date of the parties' [legal] separation." Pursuant to A.R.S. § 25–320(B), child support is typically retroactive to the filing of the dissolution petition, although the family court does have the discretion to make an award retroactive to the parties' separation based on "all relevant circumstances." *See Simpson v. Simpson,* 224 Ariz. 224, 226 ¶ 9, 229 P.3d 236, 238 (App. 2010).

¶21        The family court did not err in awarding child support retroactive to the filing of the dissolution petition. The court awarded retroactive child support from February 2011 through August 2011. Because that award was retroactive to Wife's filing of a dissolution petition in March 2011, the family court did not err. Although awarding child support retroactive to the date of legal separation was within the court's discretion, it is not required. *Id.*

¶22        Wife next contends that the family court erred by attributing her $9,750 and Husband $10,525 in monthly income because "[t]hese figures are not supported by the evidence in the record." Under the Guidelines, when a parent is unemployed or working below his or her full earning potential, a family court may impute income to that parent, up to full earning capacity, if the parent's earnings are reduced voluntarily and not for reasonable cause. *See* Guidelines § 5(E).

¶23        The family court did not err in attributing Wife a monthly income of $9,750. The court's calculation was based on Wife's earning

capacity of $90 per hour at 25 hours per week. Because this calculation is less than Wife's full earning capacity, assigning Wife a monthly income of $9,750 was well within the family court's discretion.

¶24 Wife also contends that the child support order "needs to be re-calculated based upon the true and accurate 34 days of parenting time spent by Father with the children," not the 75 days awarded by the court. The family court awarded Husband the "2nd, 3rd, and 4th weekend of each month—as well as two weeks of vacation per year—for parenting time. Nothing on the record suggests that Husband will not use the awarded parenting time. Under these circumstances, we see no abuse of discretion. Accordingly, we affirm the family court's award and calculation of child support.

### (c) Attorney's Fees

¶25 Finally, Wife argues that the family court erroneously awarded attorney's fees to Husband, which violated "Mother's right to due process of law." Specifically, Wife alleges that "[n]o attorneys' fees would be owed if the [c]ourt had applied the correct calculation of [support] arrears owed in the amount of $27,116. . . ."

¶26 We will not disturb an award of attorney's fees under § 25–324 absent an abuse of the family court's sound discretion. *See Roden v. Roden,* 190 Ariz. 407, 412, 949 P.2d 67, 72 (App. 1997). "We accept the court's findings of fact unless they are clearly erroneous." *McNutt v. McNutt,* 203 Ariz. 28, 30 ¶ 6, 49 P.3d 300, 302 (App. 2002).

¶27 Section 25–324(A) allows the family court to "order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining" a dissolution proceeding, provided the court first consider[s] the financial resources of both parties and the reasonableness of the positions each party has taken. "The purpose of the statute is to provide a remedy for the party least able to pay." *In re Marriage of Zale,* 193 Ariz. 246, 251 ¶ 20, 972 P.2d 230, 235 (1999). "[A]n applicant's inability to pay his or her own attorneys' fees is not a prerequisite to consideration for an award." *Magee v. Magee,* 206 Ariz. 589, 593 ¶ 18, 81 P.3d 1048, 1052 (App. 2004). "[A]ll a spouse need show is that a relative financial disparity in income and/or assets exists between the spouses." *Id.* at 589¶ 1, 81 P.3d at 1048.

¶28 The family court did not err in awarding Husband attorney's fees. As the court noted, "[Wife] has taken an unreasonable position during these proceedings and caused Husband to spend unnecessary and

extensive attorney's fees. Wife has filed numerous unnecessary pleadings lacking merit[,] requiring a response from [Husband]." Nothing on the record suggests a financial disparity in income or assets between Wife and Husband. Accordingly, we affirm the family court's award of attorney's fees to Husband.

**¶29** Additionally, for the first time on appeal, Wife argues that the family court's award of attorney's fees to Husband without giving her the "opportunity to be heard" denied her right to due process. Because this argument was not raised before the family court, it is waived on appeal. *See In re MH 2008-002659*, 224 Ariz. 25, 27 ¶ 9, 226 P.3d 394, 396 (App. 2010).

**¶30** Both Wife and Husband request an award of attorney's fees and costs on appeal pursuant to A.R.S. § 25–324(A). Having considered the relevant factors, we deny both requests for attorney's fees.

**CONCLUSION**

**¶31** For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: MJT