NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of

GENENE BEKELE, *Petitioner/Appellee,*

*v.*

FREWYNE ABREHA, *Respondent/Appellant.*

No. 1 CA-CV 19-0440 FC
FILED 4-23-2020

Appeal from the Superior Court in Maricopa County
No. FC2018-001746
The Honorable Bradley Astrowsky, Judge

**AFFIRMED**

COUNSEL

Bishop Law Office, P.C., Phoenix
By Daniel P. Beeks
*Counsel for Respondent/Appellant*

Keist Thurston O'Brien, Glendale
By R. Kevin O'Brien II
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent. E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Frewyne Abreha ("Wife") appeals from the child support and spousal maintenance orders entered in the decree dissolving her marriage with Genene Bekele ("Husband"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In April 2018, Husband petitioned for the dissolution of the parties' twenty-four-year marriage. Throughout the marriage, the couple owned and managed an endocrinology medical practice. Husband worked as the physician, with a dual specialty in endocrinology and internal medicine, and Wife managed the office. Their daughter, the only minor child at the time of trial, was diagnosed with a mild form of Down's Syndrome and an intellectual disability. Wife was the primary caretaker and decision-maker regarding the child's medical and educational needs.

¶3        Husband and Wife owned a marital residence, and the office condominium where the medical practice was located. When Husband filed the petition, he was no longer working, and the office condominium was at risk of foreclosure due to various debts and liens associated with the property. The couple's house, which they used as collateral to pay for office renovations, was also at risk. After filing, Husband asked the court to appoint a special commissioner to sell the office condominium and marital residence. Husband claimed that the parties were unable to continue to make payments on the office condominium and, therefore, would lose both properties. Wife opposed the motion claiming that the medical practice was her only opportunity for employment because she took care of their daughter and would often bring her to the office. She maintained that even though Husband was not working, he was able to work and anticipated he would continue to work as he had recently renewed his board certification.

¶4        The same day that Husband moved to have the court appoint a special commissioner, the court transferred the case to Conciliation Court,

which stayed the court proceedings, and the motion went unaddressed until November 2018. By then, Husband found a third-party investor to pay the office's existing liabilities, saving the office from foreclosure and allowing the parties time to sell it for the fair market value. During a November 2018 hearing, the parties agreed that they would attempt to proceed in that fashion. Husband arranged the loan with the investor and had the documents prepared, but Wife refused to sign them. The lender foreclosed on the office condominium on December 4, 2018. Three days after the foreclosure, Wife's attorney moved to withdraw, stating that continuing to represent Wife would result in a violation of the ethical rules. The court granted Wife's attorney's motion, and Wife represented herself at the trial.

¶5　　　　At the trial, the court heard testimony from both Husband and Wife. Husband's position was that the practice's demise was prompted by "Wife's refusal to complete the renewal of medical contracts, including her refusal to accept Medicare assignments nearly 7 years [earlier], replacing it with Medicare non-assignment, which has had a cascading negative impact on which providers could be accepted by the practice in recent years." Wife testified that she did not want the couple to divorce and believed that the parties could reconcile if given time. Her "position concerning her refusal to agree to the sale of the marital residence [was] that she believe[ed] her husband should continue to work and support her, their family, the marital home, all while they remain an intact family."

¶6　　　　The court struggled to keep both parties focused and responsive throughout the trial. During Husband's direct examination, the court instructed Wife not to interrupt when she disagreed with Husband's answer, explaining the difference between a legal objection and disagreement multiple times, and assuring Wife she would have an opportunity to respond. When Wife was cross-examining Husband, the court reminded her numerous times that she could only ask questions rather than testifying, the parties could not argue with each other, and she needed to stop interrupting Husband while he testified. Eventually, the court intervened and began rephrasing Wife's long statements as questions and limiting Husband to responsive answers. During Wife's presentation of evidence, the court asked her open-ended questions, allowed her to explain her answers, and asked if there was anything else she would like to add "about this topic."

¶7　　　　The court awarded the parents joint legal-decision making of their daughter, with Wife being the primary residential parent. At the time of trial, Husband's only income was "just over $1000 per month" from his

social security benefits. But the court found that nothing prevented him from obtaining employment and attributed an annual salary of $120,000 to Husband to determine child support. The court calculated Husband's monthly obligations per the guidelines as $1062 per month. Husband testified that their minor child was eligible to receive $980 per month from his benefits, but Wife refused to apply on her behalf. Because Wife "failed to take action to obtain the benefits," the court credited Husband $980 and deviated slightly from the guidelines by ordering Husband to pay $100 per month.

¶8　　　　Wife requested $5000 per month for spousal maintenance for an indefinite term. After considering the factors in Arizona Revised Statutes ("A.R.S.") section 25-319(A), the court found that Wife "established a statutory basis for entitlement to an award of spousal maintenance," but, upon considering the factors in A.R.S. § 25-319(B), declined to award any spousal maintenance. Wife appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1) and Arizona Rule of Family Law Procedure 78(c).

## DISCUSSION

¶9　　　　On appeal, Wife argues that the superior court erred by: (1) failing to award spousal maintenance after determining that she was eligible under A.R.S. § 25-319(A); (2) miscalculating child support payments; and (3) violating her due-process rights by refusing to allow her to finish cross-examining Husband.

### A.　　Finding a Spouse is Eligible for an Award of Spousal Maintenance Does Not Obligate the Court to Award Spousal Maintenance.

¶10　　　　Wife argues that the court erred by declining to award spousal maintenance after finding she was statutorily eligible because the court determined Wife's poor business decisions constituted marital waste. She argues that a court is not able to refuse to make an award after finding the seeking spouse is eligible, and that poor business decisions cannot constitute marital waste. We review the court's award of spousal maintenance for an abuse of discretion and view the evidence in the light most favorable to affirming the court's judgment. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998).

¶11　　　　As the requesting party, it was Wife's burden to prove her necessity for spousal maintenance. *See Buttram v. Buttram*, 122 Ariz. 581, 582 (App. 1979) ("[Spousal maintenance] should not be awarded if it is not necessary for the spouse's support and maintenance."). In a dissolution proceeding, "the court *may* grant a maintenance order for either spouse"

4

after finding that the spouse is statutorily eligible for spousal maintenance. A.R.S. § 25-319(A) (emphasis added). The superior court employs a two-step analysis in determining whether an award of spousal maintenance is appropriate. *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984). First, the court must find that the spouse seeking maintenance is eligible for support for any of the reasons enumerated in A.R.S. § 25-319(A). "In making an eligibility determination, the court considers only the circumstances of the requesting spouse." *In re Marriage of Cotter & Podhorez*, 245 Ariz. 82, 85, ¶ 7 (App. 2018).

¶12        Only after determining the "threshold matter" does the court "consider[] the relevant circumstances of both parties to determine whether to actually grant an award and, if so, the amount and duration." *Cotter*, 245 Ariz. at 85, ¶ 7 (citing A.R.S. § 25-319(B)). The relevant factors under step two include: "[t]he ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance," A.R.S. § 25-319(B)(4); "[t]he contribution of the spouse seeking maintenance to the earning ability of the other spouse," A.R.S. § 25-319(B)(6); and "[e]xcessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common," A.R.S. § 25-319(B)(11) ("marital waste").

¶13        Wife requested spousal maintenance of "$5,000.00 per month for an Indefinite Term." The court found that Wife was eligible for an award, but declined to award spousal maintenance, in part, because it found under A.R.S. § 25-319(B)(11): "[Wife] is directly responsible for the lion's share of waste as it concerns the decline of [Husband]'s medical practice and she is 100% responsible for the waste concerning the office condo and the marital home." The court also considered Wife's share of the community and noted that "[Wife] failed to file an Affidavit of Financial Information and presented no evidence of her expenses. Therefore, from the evidence presented, it appears [Wife] does not lack sufficient property to meet her needs."

¶14        Wife argues that the court erred by considering her poor business decisions as marital waste under A.R.S. § 25-319(B)(11) and using it as a basis to deny spousal maintenance. Assuming without deciding that a poor business decision cannot be the premise for a marital waste finding under A.R.S. § 25-319(B)(11), there is still ample evidence to support the court's judgment.

¶15        Even if good-faith business decisions cannot constitute marital waste, the award of spousal maintenance is discretionary, unlike

under A.R.S. § 25-318, where the court must make an equitable division of the parties' community property. *Compare* A.R.S. § 25-318(A) (the court "*shall* . . . divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct" (emphasis added)), *and* A.R.S. § 25-318(C) ("This section does not prevent the court from considering . . . excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common."), *with* A.R.S. § 25-319(A) ("[T]he court *may* grant a maintenance order for either spouse . . . ." (emphasis added)), *and* A.R.S. § 25-319(B) (providing a non-exhaustive list of considerations for an award of spousal maintenance including marital waste). After the court "consider[s] the relevant factors, [and] balance[s] the equities between the parties, [it may] exercise its discretion as it deems just." *Cotter*, 245 Ariz. at 87, ¶ 13. In deciding whether to award spousal maintenance, it was within the court's discretion to consider Wife's business decisions, which it found "diminished [Husband]'s ability to pay spousal maintenance."

¶16        Moreover, the court's decision was based on more than Wife's business decisions, it found—

> In addition her unreasonable failures to cooperate with [Husband] were equal to multiple years of the spousal maintenance payments she requests. The result of her waste more than offsets any spousal maintenance award the Court might have provided to her.

Although the court largely attributed the failure of Husband's medical practice to Wife's poor business decisions, the court's finding of waste was premised on Wife's refusal to cooperate in selling the office condominium and the parties' marital residence before they both went into foreclosure.

¶17        Concerning the office, the court found that after paying off the loan associated with the property there—

> remains an excess of $165,812.48, the community share of which, $82,906.24, is over $100,000 less than what the parties would have received had [Wife] been reasonable and agreed to the sale of the condo and/or signed the loan documents (and later sold the office condo). [Wife] testified that she refused to sign the document because she wanted [Husband] to continue to work to support their family. Even at trial, which was held after the actual foreclosure of the office

6

condo, [Wife]demonstrated an inability to accept reality. She insisted that the parties shouldn't get divorced, [Husband] should work, she will work with him, and life will move on as if nothing ever occurred. [Wife], therefore, is directly responsible for [Husband]'s loss of $103,250 of unrealized profit from the sale of the office condo. Despite this, [Husband] agrees to waive his waste claim and distribute the proceeds from the foreclosure sale equally with [Wife]. Regardless, [Wife]'s actions prevented her from realizing a profit of $186,156.24, which is equal to just over thirty-seven (37) months of spousal maintenance payments of $5,000.

And concerning the marital residence—

The fair market value of the home is $539,364 based upon the evidence presented by [Husband]—[Wife]did not present any evidence concerning the value of the home. If the parties sold the home for market value, they could have realized a profit of $303,372.16, less fees and costs. This would have meant an extra $151,686.08 in [Wife]'s pocket, or just over 30 months of spousal maintenance payments of $5,000. However, as [Wife]refused to agree to list the home for sale, the home is scheduled to be foreclosed upon in the next few weeks.

¶18　　　　The court further found that at the time of trial, Husband's income was "just over $1000 per month" and that, although he was living rent-free, he would soon have to find a place to live. Wife additionally contests the court's calculations and apportionment of fault for the failed business; however, it is not the amount of maintenance that is being reviewed; it is the denial of spousal maintenance altogether. After considering the relevant circumstances and balancing the equities, the court declined to award spousal maintenance, and reasonable evidence supports that conclusion.

## B.　The Court Did Not Miscalculate Husband's Child Support Obligation.

¶19　　　　Wife argues that the court miscalculated the amount of child support by not adding Husband's social security payment to the amount that it attributed to him in income. "[A]n award of child support rests within the sound discretion of the trial court and, absent an abuse of that discretion, will not be disturbed on appeal." *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999). "An abuse of discretion exists when the record, viewed in

the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision." *Id.* (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)).

¶20 Here, although the court found that Husband's income was "just over $1000 per month," it attributed $120,000 to him based on his income history. After calculating Husband's obligation as $1062 per month per the guidelines, the court determined "[a]pplication of the child support guidelines in this case is inappropriate or unjust" because—

> [t]he child is eligible to receive $980.00 per month from his social security benefits, as of November, 2018. [Husband] desires [Wife] to [receive] this full benefit on behalf of the parties' minor child. [Wife], however, not uncharacteristically, failed to take action to obtain the benefits. When considering a downward deviation from the child support calculation, the Court took into account this benefit that [Wife]should receive to help provide for the child. Therefore, the Court found that a downward deviation was warranted.

¶21 Wife contends the court erred by not including Husband's social security income when calculating his child support payment. She claims that according to the Arizona Child Support Guidelines, A.R.S. § 25-320(5)(A), the court is required to consider gross income from any source, including social security. However, she provides no authority to support the proposition that the court was required to consider *both* Husband's actual income and his hypothetical income. Accordingly, the court did not abuse its discretion by choosing to calculate Husband's child support obligation based on the higher income the court attributed to him rather than the lesser social security benefit.

¶22 Likewise, Wife argues that the court could not credit Husband's child support payment with amounts from the child's social security when those payments had not yet been received. The court is not required to wait for Wife to act before reducing Husband's child support obligation. This is particularly true in a situation where Wife has failed to take action to mitigate any of the parties' losses throughout the dissolution proceeding. The court found that the child was eligible to receive benefits as of November 2018, and Wife failed to apply on the child's behalf.

## C.    The Court Did Not Violate Wife's Due-Process Rights.

¶23        Finally, Wife claims that the court violated Wife's due-process rights when it interrupted her cross-examination of Husband and did not allow her to testify on her behalf. Wife maintains that we must vacate the entire decree and remand for a new trial. "The trial court has discretion to control the courtroom and trial proceedings." *Christy A. v. ADES*, 217 Ariz. 299, 308, ¶ 31 (App. 2007). "We will not interfere in matters within [the court's] discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial." *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 27 (1966).

¶24        After informing Wife five times that she could not interrupt Husband's direct examination, the court threatened Wife with criminal contempt if it happened again. Nevertheless, the court guided Wife through more than a dozen additional disruptions before terminating her cross-examination. The court did not err.

¶25        The court is not required to "indulge inefficient use of time by parties or their counsel." *Volk v. Brame*, 235 Ariz. 462, 469, ¶ 22 (App. 2014). In its judgment, the court noted Wife's "difficulty in being able to focus on an issue and be responsive to questions. [She] repeatedly provided non-responsive answers to questions posed to her at trial and simply repeated herself." And the record reflects as much. Before terminating Wife's questioning, the court attempted to facilitate the examination by eliciting questions out of her lengthy monologues and limiting Husband to responsive answers. Even with Wife's obstruction, the court continued assisting her by asking her in-depth, focused questions so it could make appropriate findings. It patiently rephrased questions—sometimes several times—before receiving a responsive answer. And it allowed Wife to explain her answers fully. The court additionally asked Wife on several occasions if there was anything else she wanted to add.

¶26        Wife claims that "[b]ecause the trial involved issues of legal decision-making and parenting time of the Child, this type of sanction against [Wife] was improper. Precluding a party from presenting evidence at trial unnecessarily interfered with the trial court's duty to consider the Child's best interests in ruling on custody issues." However, Wife makes no argument about the judgment concerning decision-making or parenting time. Moreover, the court asked Wife what kind of arrangement she would want with Husband, and she responded that she would like their child to live with her but have visitation with her father regularly. The court's parenting order is consistent with Wife's wishes.

**CONCLUSION**

**¶27** We affirm the superior court's judgment. Both parties request an award of attorney's fees and costs. In our discretion, we decline to award attorney's fees; however, as the prevailing party, Husband is entitled to costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA