NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

JASON S. MCCANLESS, *Petitioner/Appellee,*

*v.*

SAMANTHA MCCANLESS, *Respondent/Appellant.*

No. 1 CA-CV 21-0458 FC
FILED 4-19-2022

Appeal from the Superior Court in Maricopa County
No. FC2014-093082
The Honorable David E. McDowell, Judge

**AFFIRMED**

COUNSEL

Crider Law PLLC, Mesa
By Brad J. Crider
*Counsel for Petitioner/Appellee*

Landry Law Office PC, Phoenix
By Wm. Troy Landry
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Judge Cynthia J. Bailey joined.

---

**P A T O N**, Judge:

¶1        Samantha McCanless ("Mother") appeals the superior court's ruling on her petition to modify legal decision-making, parenting time, and child support.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Jason McCanless ("Father") (collectively "Parents") married in September 2007.  Parents' marriage was dissolved in March 2015 by a Consent Decree that awarded them joint legal decision-making authority and equal parenting time for their three children.  Under the parenting time schedule, the children would stay with each parent on a weekly basis.

¶3        After Father dropped the children off with Mother on March 15, 2020, Mother took them to Concho, Arizona.  While in Concho, Mother told Father she wanted to keep the children there until the COVID-19 pandemic situation improved.  Parents apparently agreed to temporarily modify parenting time to a biweekly rotation to accommodate her request.  Shortly after reaching this temporary agreement, however, Mother told Father she changed her mind and wanted to keep the children in Concho for longer than two weeks because they were safer there.  Father objected, noting she had just agreed to the biweekly rotation.

¶4        Mother's counsel sent Father a letter outlining her concerns about the children, including COVID-19 safety, extracurricular activity expenses, and parenting time.  Mother rejected Father's request that she bring the children back from Concho and referred to Parents' purported agreement to temporarily modify parenting time to the biweekly rotation.  Father responded that Mother terminated that agreement when she said she would keep the children in Concho for the foreseeable future and that his counsel advised him to contact the police if the children were not timely returned.  Ultimately, Father contacted police after Mother kept the children in Concho for over three weeks.

¶5        On March 30, 2020, Father filed a petition to enforce parenting time ("Father's Enforcement Petition"), asserting that Mother withheld the children and "us[ed] COVID-19 to justify her actions."  Father sought make-up parenting time, a $100 per day penalty for each day Mother did not permit him parenting time, and attorneys' fees.

¶6        Mother filed a petition to modify legal decision-making, parenting time, and child support ("Mother's Modification Petition") three weeks later.  She requested an equal split of the children's extracurricular activity expenses, an increase in her parenting time, temporary custody due to COVID-19, and attorneys' fees.

¶7        At the end of April, the superior court scheduled an evidentiary hearing on Father's Enforcement Petition.  After Mother returned the children and agreed to make-up parenting time, however, Father requested to vacate his upcoming Enforcement Petition hearing, which the court granted.  Neither Father's request to vacate nor the court's order addressed Father's make-up parenting time request.

¶8        The superior court held an evidentiary hearing on Mother's Modification Petition in May 2021.  The court found substantial and continuing changes in circumstances justified modifying parenting time and legal decision-making, including that Mother made numerous legal decisions without consulting Father and incurred extracurricular expenses without his permission.

¶9        The superior court ordered continued joint legal decision-making authority and for each parent to be responsible for expenses incurred without the other parent's consent.  The court altered the parenting time schedule and ordered Mother to pay child support.  The court awarded attorneys' fees to Father and denied Mother's request to compel Father to pay for extracurricular activities.

¶10        Mother timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes  ("A.R.S.") sections 12-120.21(A)(1) and 12-2101(A)(1).

**DISCUSSION**

¶11        Absent an abuse of discretion, we will uphold the superior court's orders for parenting time, legal decision-making, and child support. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (citation omitted); *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (citation omitted).  The same standard applies to attorneys' fees. *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004)

(citation omitted). The superior court abuses its discretion when the record, viewed in the light most favorable to upholding the court's decision, is "devoid of competent evidence to support" the court's decision. *Little*, 193 Ariz. at 520, ¶ 5 (citation omitted). We will affirm the superior court's ruling if it is supported by substantial evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) (citation omitted).

¶12        Mother argues that the superior court erred in (1) its findings of fact, (2) reducing her parenting time and by ordering briefing on make-up parenting time, (3) calculating child support, and (4) awarding Father attorneys' fees.

## I.        The superior court did not misconstrue the evidence.

¶13        Mother claims that the superior court's typographical errors in its ruling show it failed to understand the factual timeline. The court's errors, however, were technical and would not alter the outcome. *See* Ariz. Const. art. 6, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."). For example, the court mistakenly stated Parents married in September 2017 instead of September 2007. It later noted in the same paragraph, however, that Parents divorced in March 2015.

¶14        Mother correctly notes the superior court's minute entry mistakenly stated that an evidentiary hearing was held on both Mother's Modification Petition *and* Father's Enforcement Petition when the hearing was only on Mother's Petition. The court, however, noted multiple times in the record that the purpose of the hearing was to address Mother's Modification Petition. First, at the outset of the hearing, when the court said "[w]e're here today for an evidentiary hearing on [Mother's] petition." Second, in the minute entry when the court said the hearing would address Mother's Modification Petition. Finally, in the court's ruling when it stated it "took under advisement the issues raised in *the* Petition[]" and the hearing for Father's Enforcement Petition "was vacated." (Emphasis added). Because the record shows the hearing focused on the issues raised in Mother's Modification Petition and Father's response, Mother was not "prejudiced" by a lack of notice of the issues to be decided.

¶15        Mother's claim that the superior court "failed to understand that it was Father who was retaliating against Mother" is also not supported by the evidence. As outlined above, Parents' messages to each other show that Mother sought to strong-arm Father into agreeing with her. Father

testified that although he and Mother discussed the two weeks on/two weeks off parenting time arrangement, it "turned into something worse and snowballed." Mother testified that she voluntarily disobeyed the court order and kept the children for over three weeks. The superior court heard evidence that Parents' eldest daughter secretly sent Father a Snapchat message stating Mother would not allow the children to text him and said they would not see him until May because of COVID-19. Additionally, the record showed Mother's statements and actions did not support her purported concern about COVID-19. Father repeatedly asked Mother to speak to the children, which she allowed them to do only intermittently. Mother's allegation that Father filed a "false police report" to have the children returned also fails because Mother violated the parenting plan. Although Father was two hours late when he dropped off the children on Mother's Day/Mother's birthday, there is no evidence this action was retaliatory.

**¶16**        Additionally, while Mother argued that the issue of her taking the children to Concho was "moot," the superior court found Mother's decision to keep the children was consistent with her pattern of unilateral decision-making and properly used this fact in conducting its best interests analysis under A.R.S. §§ 25-403 and -403.01.

**¶17**        Mother asserts that Father committed perjury by testifying that he did not receive her counsel's March 2020 letter until after Mother filed her Modification Petition. This testimony conflicts with a text message Father sent acknowledging receipt of the letter before the Petition was filed. Notwithstanding Father's statement, however, the record contains substantial evidence to support the court's findings. *See Hurd*, 223 Ariz. at 52, ¶ 16 ("Even though conflicting evidence may exist, we affirm the trial court's ruling if substantial evidence supports it.") (citation omitted). We find no abuse of discretion.

## II.        The court's parenting time decision was proper.

**¶18**        To alter an earlier parenting time order, the superior court must determine that a material change in circumstances affecting the child's welfare has occurred. *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (citation omitted). "The superior court is vested with broad discretion to decide whether a change of circumstances has occurred." *Id.* (citation omitted). The court then must determine parenting time "in accordance with the best interests of the child" and in contested cases, make "specific findings" regarding the relevant best interests factors. A.R.S. § 25-403(A)-(B).

¶19        Here, the superior court first determined that a substantial change in circumstances occurred from the Consent Decree. The court noted that although some circumstances asserted as rationale for modification were not substantial and continuing when considered in isolation, the threshold was met when viewing the totality of the evidence. The court relied on the record to find that Mother's unilateral decision-making was substantial and continuing. Thereafter, the court conducted a detailed best interests analysis under A.R.S. § 25-403. The record supports the court's findings and conclusions.

¶20        Mother next argues that the superior court abused its discretion in ordering briefing on Father's request for make-up parenting time. Mother is correct that despite having previously vacated the evidentiary hearing on Father's Enforcement Petition, the court's order invited Father to file a brief regarding make-up parenting time, which he did in June 2021. Several weeks later, however, the court filed an order stating: "In light of [Mother's] Notice of Appeal and the court's erroneous inclusion of Rule 78(c) *Ariz. R. Fam. L. Proc.* language in its [ruling], this Court presently lacks jurisdiction to address [Father's] request for make-up parenting time. [Father's] Request will be held until the Court is reinvested with jurisdiction." The superior court did not rule on Father's Enforcement Petition and the matter has yet to be resolved. As such, it is not a final order, and we lack jurisdiction to consider it and any arguments pertaining thereto. *See Yee v. Yee*, 251 Ariz. 71, 76, ¶ 14 (App. 2021) (to be appealable, a special order after final judgment must resolve all issues raised in the petition that initiated the post-decree proceeding).

### III.    The child support calculation was not erroneous.

¶21        The purpose of a child support order is "[t]o establish a standard of support for children consistent with the reasonable needs of children and the ability of parents to pay." A.R.S. § 25-320 app. § 1(A) (2018) ("2018 Guidelines") (current version at A.R.S. § 25-320 app. (2022)). Provisions of any decree regarding child support may be modified "only on a showing of changed circumstances that are substantial and continuing." A.R.S. § 25-327(A); *see Schroeder v. Schroeder*, 161 Ariz. 316, 323 (1989) ("The question whether a substantial and continuing change in circumstances occurred . . . [is] a question of fact."). The decision to modify child support is within the superior court's "sound discretion." *Nia v. Nia*, 242 Ariz. 419, 423, ¶ 9 (App. 2017) (citation omitted). "Evidence regarding current or reasonably projected income, and of recent years' income may assist the court in determining whether an increase or decrease in income is 'continuing.'" *Id.* at 423, ¶ 12 (citation omitted). If a parent's earnings are

voluntarily reduced, the court may impute income to the parent up to his or her earning capacity. 2018 Guidelines § 5(E).

¶22 Here, the Consent Decree provided that neither parent was to pay child support. The superior court found, among other things, that Mother met the burden to demonstrate that a modification of the Consent Decree was "justified as a substantial and continuous change in circumstances affecting the parenting time and legal decision making for the Children."

¶23 In calculating child support, the superior court found Mother voluntarily worked for no compensation at her husband's law firm. Mother testified that she made twenty-one dollars per hour at her previous job and believed that she would eventually make around twenty to twenty-two dollars an hour at the law firm. Based on her testimony, the court did not abuse its discretion in imputing an income of twenty-one dollars per hour to Mother.

¶24 Mother also contends the superior court erred by not including Father's commissions in its income calculation. Indeed, gross income "may include" commission income. 2018 Guidelines § 5(A). Nonetheless, "[i]ncome from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes." 2018 Guidelines § 5(A).

¶25 The court's child support calculations were not erroneous based on the guidelines and the evidence. The court's child support worksheet shows that it diligently reviewed Parents' finances and adjusted child support obligations based on Father's monthly payment amount for the children's insurance.

¶26 Additionally, although the superior court found that Mother made significant expenditures for the children's extracurricular activities which benefitted them, she regularly made them without Father's consent. Mother testified that because the Consent Decree did not provide for extracurricular expenses or reimbursement, she and Father would communicate regarding whether to reimburse the other. Communications indicate that Mother pressured Father to agree to the expenses. For example, when Father indicated that he would pay for a less expensive cheer program for their eldest daughter but not for the more expensive travel program, Mother replied: "I hope [eldest daughter] really hates you." Despite this evidence, however, the court reduced Mother's child support obligation to sixty-seven dollars per month—to be used towards

7

extracurricular activity expenses. The court's child support determination was proper.

### IV.    Attorneys' fees and costs were properly awarded to Father.

**¶27**        The superior court may award attorneys' fees after considering the financial resources and the reasonableness of the parties' positions. A.R.S. § 25-324(A). We review an award of attorneys' fees for an abuse of discretion and will not disturb the superior court's order "if there is any reasonable basis for it." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004) (citation and internal quotation marks omitted).

**¶28**        Mother argues that the superior court abused its discretion in awarding Father his attorneys' fees. We disagree. The court found Mother acted unreasonably by (1) making unilateral legal decisions, (2) attempting to extract contributions from Father for expenses she incurred, and (3) seeking modification based on Father's refusal to contribute to extracurricular expenses he did not agree to pay. Parents provided financial affidavits for the court to assess their financial resources. There was a reasonable basis for the court's fee award.

**¶29**        Mother contends that the superior court should have required Father to submit a *China Doll* affidavit before determining attorneys' fees. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183 (App. 1983). A *China Doll* affidavit aids the court in assessing the reasonableness of requested fees. *Id.* at 187-88. Here, Father's financial affidavit stated that his attorneys' fees were $3,500. Father testified he was willing to file an application for an order of attorneys' fees and costs. The court awarded Father $3,500 for attorneys' fees and costs. *See generally* A.R.S. § 25-324.

**¶30**        Although a *China Doll* affidavit can aid the court in determining a fee amount, it does not help determine if a party is entitled to fees under A.R.S. § 25-324. "Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowner Ass'n*, 216 Ariz. 482, 491, ¶ 38 (App. 2007) (citation omitted). Although the better practice is to require a *China Doll* affidavit, we have not held that a *China Doll* affidavit is mandatory to receive fees in a child support or parenting time action.

**¶31**        The superior court had substantial evidence before it regarding Parents' resources from their financial affidavits and trial testimony. Although the record does not indicate that a fee application or

*China Doll* affidavit were provided, a reasonable basis exists for the fee award given Father's avowal that his fees were $3,500. Mother cites no evidence that the fees were unreasonable, and we find no abuse of discretion.

**¶32** Father requests attorneys' fees and costs on appeal under A.R.S. §§ 12-349 and 25-324. We decline to award Father attorneys' fees but award him costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-341.

**CONCLUSION**

**¶33** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

9